**Tholonaus Darrell POMIER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–09–00247–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 2010.

Mark W. Stevens, Galveston, for appellant.

B. Warren Goodson, Jr., Galveston, for state.

Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

## OPINION

LESLIE B. YATES, Justice.

Appellant Tholonaus Darrell Pomier raises ten issues challenging the trial court's judgment sentencing him to twenty years' imprisonment following his conviction for the felony offense of stalking. In issues one and two, appellant contends the trial court erred in denying his motion to quash the indictment and that his punishment was improperly enhanced. In issues three and four, he argues the evidence is legally and factually insufficient to support his conviction. In issues five and six, he claims his conviction violates the Double Jeopardy Clauses of the United States and Texas Constitutions. In his remaining issues, appellant asserts the Texas stalking statute is unconstitutional on its face and violates the prohibitions against ex post facto laws contained in the United States and Texas Constitutions. We affirm appellant's conviction as reformed, reverse the trial court's judgment sentencing appellant to twenty years' imprisonment, and remand the case for a new punishment hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Barbara Simmons were involved in a two to three year relationship in the early 1990s. In February 1994, Simmons gave birth to a daughter fathered by appellant. Prior to the child's birth, Simmons decided to leave appellant because he had become physically abusive. At trial, Simmons testified that appellant beat her on several occasions, including once shortly after she became pregnant. Based on these incidents of abuse, Simmons obtained a protective order in July 1993, which prevented appellant from communicating with or coming near her. Simmons also testified that on a separate occasion in the summer of 1993, she suffered severe injuries after appellant broke into her apartment and beat her with a crowbar. Following this incident, appellant was arrested and charged with burglary of a habitation. Appellant pleaded guilty to a reduced charge of aggravated assault and was sentenced to six years' deferred community supervision. In October 1995, appellant was sentenced to five years' imprisonment after violating the terms of his community supervision.

At some point after appellant was released from prison, he began driving past Simmons's home and demanding to see their daughter, threatening to kick Simmons's door in, and constantly calling Simmons at her home and work. Simmons filed for another protective order in 2002 because of this behavior. Simmons testified that she also applied for protective orders in 2005 and 2007 because appellant was "harassing and bothering" her and her daughter. According to Simmons, appellant would not leave her alone and would contact her each time an order was set to expire and say "you can't stop me from coming around."

On April 25, 2007, appellant was placed in jail for nonpayment of child support following an enforcement hearing attended by appellant and Simmons. Appellant was released from jail on April 27, 2007. The following day, appellant went to Simmons's apartment and demanded to see his daughter. Simmons testified that appellant told her he was going to hurt her and "get" her because "he was tired of spending all of his money getting out on bail and stuff like that." Simmons called the police after appellant left her home. Officer William Ashton went to Simmons's apartment and described Simmons as "scared" and "petrified" upon his arrival. Officer Ashton arranged for Simmons to speak with Officer Crystal Teague, a member of the police department's domestic violence unit, that same day. Officer Teague testified Simmons "was afraid that [appellant] was going to kill her. He had come to her home. He had made a threat against her and she believed that he was going to kill her." Appellant was subsequently indicted for stalking Simmons.

Appellant represented himself at trial. A jury convicted appellant and, after finding an enhancement allegation true, assessed punishment at twenty years' confinement in the Texas Department of Criminal Justice, Institutional Division. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his third and fourth issues, appellant argues the evidence is legally and factually insufficient to support his conviction. While this appeal was pending, the Court of Criminal Appeals held that only one standard should be used to evaluate the sufficiency of the evidence in a criminal case: legal sufficiency. *Brooks v. State,* 323 S.W.3d 893, 894 (Tex.Crim.App.2010) (plurality opinion); *id.* at 926 (Cochran, J., concurring). Accordingly, we review the sufficiency of the evidence in this case under a rigorous and proper application of the *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), legal sufficiency standard. *Brooks,* 323 S.W.3d at 905 (plurality opinion).

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 898. This court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.* at 901; *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim.App.1999); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986) (stating the jury may choose to believe or disbelieve any portion of the testimony at trial). We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks,* 323 S.W.3d at 902 n.8, 905. Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the

crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

## B. Applicable Law

In order to obtain a conviction, the State was required to prove that appellant (1) on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Simmons (2) knowingly engaged in conduct, including following Simmons, (3) that he knew or reasonably believed Simmons would regard as threatening bodily injury or death to her, (4) that caused Simmons to be placed in fear of bodily injury or death, and (5) that would cause a reasonable person to fear bodily injury or death for himself or herself. TEX. PENAL CODE ANN. § 42.072(a) (West 2003).

## C. Sufficiency Analysis

■ Appellant was charged with stalking Simmons from 1993 to 2007. In order to prove the elements of the charged offense, the State presented evidence of appellant's history of violent and threatening behavior directed at Simmons. Simmons testified that appellant beat her on several occasions, including once while she was pregnant and again when he broke into her apartment in 1993. Simmons's former neighbor, Willis Vallier, testified that he often heard screaming and yelling coming from Simmons's apartment. On one occasion in 2003 or 2004, Simmons rushed into Vallier's apartment. According to Vallier, Simmons was "hysterical, crying, [and] screaming [for] somebody to go upstairs and get her baby." Vallier saw appellant chasing Simmons down the stairs and trying to strike her with his fist. Appellant attempted to follow Simmons into Vallier's apartment, but Vallier prevented him from entering. Simmons also testified that appellant threatened to "hurt her" in April 2007 because he had been jailed for failing to pay her child support. According to testimony from Officers Ashton and Teague, Simmons appeared to be in fear for her life after appellant came to her home in April 2007.

The State also presented evidence that, after appellant was released from prison, he began continuously calling Simmons at her home and work and threatening to kick in her door. Simmons and her daughter each testified that they saw appellant drive past their home on many occasions, and Simmons stated that she often saw appellant sitting in a vehicle parked outside her home. Appellant's behavior caused Simmons to file for multiple protective orders to prevent him from contacting or coming near her or their daughter. Simmons stated she had to keep filing for protective orders because appellant would not leave her alone and "would always come back" after an order expired. Simmons ultimately testified that each time appellant came by her home or called her, she felt "[s]cared for my safety and scared for my life" because he had beaten her "so many times all he could do was kill me next."

Appellant presents three arguments on appeal for why the evidence is insufficient: (1) his interactions with Simmons were too "widely separated in time" to be considered evidence of any scheme or course of conduct directed at Simmons; (2) contradictory, inconsistent, and embellished testimony offered by Simmons shows she did not regard his conduct as threatening her with bodily injury or death; and (3) appellant could not have known or reasonably believed Simmons would regard his conduct as threatening her with bodily injury or death. We disagree, and we address each of these arguments in turn.

■ First, section 42.072 does not specify a time period in which the scheme or course of conduct must occur; rather, it

merely requires that the accused's conduct must occur "on more than one occasion and pursuant to the same scheme or course of conduct." TEX. PENAL CODE ANN. § 42.072(a); *see also Hutton v. State*, 313 S.W.3d 902, 908 (Tex.App.-Amarillo 2010, no pet.) (concluding the plain meaning of section 42.072 does not require "a particular or minimum interval of time for events to occur on 'more than one occasion'"). Thus, by definition, the offense of stalking "contemplates the presentation of evidence that covers the *entire course* of a defendant's alleged unlawful conduct directed specifically towards a complainant." *Molett v. State*, No. 05-08-00728-CR, 2009 WL 824761, at *5 (Tex.App.-Dallas Mar. 31, 2009, pet. ref'd) (not designated for publication) (emphasis added).

The testimony in this case shows that appellant physically abused and threatened to harm Simmons on multiple occasions from 1993 to 2007. During several years of that time period, appellant drove past Simmons's home, sat in a vehicle parked outside her home, repeatedly called her at her home and work, and threatened to kick in her door. Viewing this evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant's conduct constituted a scheme or course of conduct. *See Hutton*, 313 S.W.3d at 908; *see also Lewis v. State*, No. 09-06-047 CR, 2007 WL 2200000, at *1-3 (Tex.App.-Beaumont Aug. 1, 2007, no pet.) (mem. op., not designated for publication) (concluding that evidence of four separate instances of conduct by the appellant directed at his former girlfriend over a four-year period was legally sufficient to support conviction for stalking); *Thomas v. State*, No. 13-03-00655-CR, 2005 WL 1774600, at *1-3 (Tex. App.-Corpus Christi July 28, 2005, no pet.) (mem. op., not designated for publication) (upholding stalking conviction where evidence consisted of the appellant's conduct

between 1978 and 2002 directed toward his ex-wife).

Second, appellant's argument regarding Simmons's testimony is essentially challenging her credibility as a witness. But as the exclusive judge of the credibility of the witnesses and the weight to give their testimony, the jury resolves conflicts or inconsistencies in such evidence. *Brooks*, 323 S.W.3d at 901-02 & n. 19. In support of his argument, appellant relies mainly upon portions of Simmons's testimony where she admits she could have called the police any time appellant interacted with her. He also claims Simmons embellished the extent of her injuries resulting from the 1993 burglary and assault because an assault with a crowbar would result in injuries more severe than those depicted by photographs taken after the incident. Further, appellant asserts his conduct could not be regarded as threatening because Simmons made no allegations of physical violence after 1993. But in addition to the testimony referenced by appellant, the jury also heard Simmons testify that she feared for her life and safety because, after being beaten so many times, "all [appellant] could do was kill me." Simmons also testified that she applied for and obtained protective orders against appellant on multiple occasions. Simmons's fears for her safety and life are further supported by testimony from Officers Ashton and Teague that Simmons was in fear for her life after appellant came to her home in April 2007. After reviewing all the evidence, we conclude that a rational jury could find beyond a reasonable doubt that Simmons viewed appellant's conduct as threatening her with bodily injury or death.

■ Finally, the evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that appellant possessed

the requisite mental state. A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(b) (West 2003). Proof of a culpable mental state almost invariably depends upon circumstantial evidence and may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App.2002); *Gant v. State*, 278 S.W.3d 836, 839 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Here, the jury heard evidence that appellant beat Simmons severely on multiple occasions, and Simmons repeatedly applied for and obtained protective orders because appellant would not leave her alone. Additionally, the testimony shows that appellant drove by Simmons's apartment, continuously called Simmons at her home and work, and repeatedly demanded to see their daughter. These facts, when combined with Simmons's testimony that she was afraid appellant would kill her because he had beaten her so many times, would allow a rational jury to infer appellant knew or reasonably believed Simmons would regard his conduct as threatening bodily injury or death. *See Hart*, 89 S.W.3d at 64; *Gant*, 278 S.W.3d at 839; *see also Martinez v. State*, No. 03–04–00495–CR, 2005 WL 2170348, at *3–4 (Tex.App.-Austin Sept. 9, 2005, pet. ref'd) (mem. op., not designated for publication) (finding sufficient evidence to conclude the appellant knew or reasonably believed his conduct would threaten the complainant with bodily harm or death when the appellant made repeated phone calls to the complainant, appeared at the complainant's place of business on multiple occasions, and followed the complainant, although the complainant admitted the appellant never threatened to harm her).

Accordingly, the evidence is sufficient to support appellant's conviction, and we overrule appellant's third and fourth issues.

### APPELLANT'S MOTION TO QUASH

In his first issue, appellant asserts the trial court erred by overruling his amended motion to quash the indictment. The relevant portions of the indictment read:

[O]n or about the 28th day of APRIL, A.D., 2007, ... [appellant] did then and there knowingly engage in conduct directed specifically toward Barbara Simmons that [appellant] knew or reasonably believed the said Barbara Simmons would regard as threatening bodily injury or death to the said Barbara Simmons, to wit: telephoning the said Barbara Simmons, threatening harm to the said Barbara Simmons, and sitting outside the said Barbara Simmons' [s] house in a motor vehicle, and [appellant's] conduct would cause a reasonable person to fear, and did cause the said Barbara Simmons to fear, bodily injury or death for the said Barbara Simmons.

And it is further presented ... that on the 12th day of July, 1993, ... [appellant] did then and there knowingly engage in conduct directed specifically toward the said Barbara Simmons by committing Burglary of a Habitation against the said Barbara Simmons.

And it is further presented ... that each of the foregoing acts was committed pursuant to the same scheme or course of conduct that was directed specifically at Barbara Simmons, against the peace and dignity of the State.

Appellant argued in his amended motion to quash that the indictment was (1) "insuffi-

cient as a matter of law" because it did not allege a violation of Texas Penal Code section 42.072, the Texas stalking statute, and (2) "defective in that it contains [a] matter which is a legal defense or bar to the prosecution." The trial court denied appellant's motion.

We review a trial court's denial of a motion to quash de novo. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex.Crim. App.2007); *Kfouri v. State*, 312 S.W.3d 89, 91 (Tex.App.-Houston [14th Dist.] 2010, no pet.). A defendant must be given sufficient notice before trial of the "nature and cause" of the accusation against him to enable the defendant to anticipate the State's evidence and prepare a proper defense. *Kfouri*, 312 S.W.3d at 91. An indictment must also satisfy the constitutional requirement of subject-matter jurisdiction over "an offense." *Teal v. State*, 230 S.W.3d 172, 181 (Tex.Crim.App.2007).

Appellant presents two arguments for why the trial court erred by denying his motion to quash. First, he contends the indictment is defective because it omits a "clearly required element" of the stalking offense, i.e., that appellant "followed" another person. *See* TEX. PENAL CODE ANN. § 42.072(a) (stating a person commits an offense by engaging in certain proscribed conduct, "including following [another] person," which causes a desired result). Appellant has failed to preserve this argument for review. The failure to allege an element of an offense in an indictment is a defect in the substance of the indictment. *Studer v. State*, 799 S.W.2d 263, 268 (Tex.Crim.App.1990); *Salahud-din v. State*, 206 S.W.3d 203, 211 (Tex.App.-Corpus Christi 2006, pet. ref'd). Defects, errors, or irregularities in the substance of an indictment must be raised

prior to trial or the defendant "waives and forfeits the right to object" on appeal. TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). Appellant's motion to quash did not complain that the indictment failed to allege an element of the offense. Because appellant did not complain of the omission of an element of the offense prior to trial, this argument is not properly before this court. *Id.; see also Sanchez v. State*, 120 S.W.3d 359, 363–64, 368 (Tex. Crim.App.2003) (concluding a motion to quash containing a general allegation that an indictment failed to allege criminal conduct was not sufficient to preserve a complaint on appeal that the indictment failed to allege a culpable mental state, a required element of the charged offense).

Next, appellant argues the indictment did not vest the district court with subject-matter jurisdiction over the charged offense.[1] Specifically, appellant contends the State failed to charge him with felony stalking because, to establish an element of the offense, the State used conduct that occurred in 1993, which was prior to the effective date of the current version of section 42.072. Thus, appellant argues, the district court did not have jurisdiction over this case.

District courts have jurisdiction over felonies, misdemeanors involving official misconduct, misdemeanors transferred to the district court pursuant to article 4.17 of the Texas Code of Criminal Procedure, and misdemeanors that are "included in the indictment." *See* TEX.CODE CRIM. PROC. ANN. arts. 4.05–.06 (West 2005); *Murray v. State*, 302 S.W.3d 874, 877 (Tex.Crim.App. 2009). Stalking is currently classified as a third degree felony. *See* TEX. PENAL CODE ANN. § 42.072(b). This classification, how-

---

1. A court's lack of subject-matter jurisdiction may be raised for the first time on appeal. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim.App.2002); *Hall v. State*, 303 S.W.3d 336, 341 (Tex.App.-Amarillo 2009, pet. ref'd).

ever, applies only to offenses committed on or after September 1, 2001.[2] *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 2, 2001 Tex. Gen. Laws 2795, 2796 (current version at TEX. PENAL CODE ANN. § 42.072). If any element of the offense occurred prior to this date, the offense is covered by the law in effect when the offense was committed. *Id.*

A required element of stalking is that a person knowingly engage in conduct directed specifically at another person "on more than one occasion and pursuant to the same scheme or course of conduct." TEX. PENAL CODE ANN. § 42.072(a). The State alleged in the indictment that "pursuant to the same scheme or course of conduct" appellant (1) called Simmons on the telephone, (2) threatened Simmons with harm, (3) sat outside Simmons's home in a vehicle, and (4) committed burglary of a habitation against Simmons in July 1993. Thus, viewing only the language in the indictment, the inclusion of the 1993 burglary incident to establish an element of stalking made the previous version of the statute applicable. *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 2, 2001 Tex. Gen. Laws 2795, 2796; *Ploeger v. State*, 189 S.W.3d 799, 803 n. 1 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("The current version of the stalking statute makes the offense a felony, but that version does not apply to appellant, who committed at least some of the acts for which he was prosecuted before [September 1, 2001]."); *State v. Seibert*, 156 S.W.3d 32, 33 n. 1 (Tex.App.-Dallas 2004, no pet.) (noting that stalking indictment was for misdemeanor rather than felony because even though the indictment was signed after September 1, 2001, the alleged conduct occurred before the effective date of the statute).

However, even though the indictment included language that would have properly charged appellant with a misdemeanor rather than a felony, the trial court still had jurisdiction. Presentment of a valid indictment vests the trial court with jurisdiction. *See* TEX. CONST. art. V, § 12; *Teal*, 230 S.W.3d at 176. When determining if an indictment is so flawed that it does not constitute an actual indictment and thus does not vest the trial court with jurisdiction, the critical determination is whether the court and the defendant can identify what penal code provision is alleged and whether that provision vests the trial court with jurisdiction. *See Kirkpatrick v. State*, 279 S.W.3d 324, 328 (Tex.Crim.App.2009) (citing *Teal*, 230 S.W.3d at 172). We must examine whether the trial court and the defendant can determine that the indictment intends to charge a felony or other offense for which the trial court has jurisdiction. *Teal*, 230 S.W.3d at 181. Here, although the indictment, by including an allegation regarding conduct occurring before the effective date of the statute, properly charged a misdemeanor, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the State intended to charge him with a felony offense. *Kirkpatrick*, 279 S.W.3d at 329. Thus, even though the felony indictment was defective, the trial court had jurisdiction, and appellant must have lodged a proper objection to the indictment defect to preserve error. *See id.; Teal*, 230 S.W.3d at 182. Appellant's motion to quash did not raise this defect, and therefore, this argument is waived. *See Kirkpatrick*, 279 S.W.3d at 329; *Teal*, 230 S.W.3d at 182.

Because appellant did not preserve error on the grounds he alleges on appeal as

---

**2.** Prior to September 1, 2001, stalking was classified as a Class A misdemeanor. *See* Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 1, 1997 Tex. Gen. Laws 1, 1 (amended 2001).

to why his motion to quash should have been granted and because his grounds do not implicate the trial court's jurisdiction, we overrule appellant's first issue.

## IMPROPER PUNISHMENT

■■■ Appellant notes in his brief that he should have been indicted under a previous version of section 42.072 due to the State's use of events occurring prior to September 1, 2001, to establish an element of the offense. As we stated above, the current version of the stalking statute makes the offense a felony, but that version does not apply here because some of the acts for which appellant was prosecuted occurred before September 1, 2001. See Ploeger, 189 S.W.3d at 803 n. 1. The jury charge in this case included the 1993 conduct as part of the offense, and therefore appellant's conviction was for a Class A misdemeanor. Cf. Lugo v. State, No. 10–09–00170–CR, 2010 WL 1712488, at *2 (Tex.App.-Waco Apr. 28, 2010, no pet.) (mem. op., not designated for publication) (holding that because jury charge application paragraph omitted an element necessary to raise offense from misdemeanor to felony, defendant was convicted of only a misdemeanor).

The maximum sentence for a Class A misdemeanor is a jail term not to exceed one year and/or a fine not to exceed $4,000. TEX. PENAL CODE ANN. § 12.21 (West 2003). Appellant was sentenced as though convicted of a third degree felony enhanced to a second degree felony and received twenty years' imprisonment. As such, appellant's sentencing for a felony offense was outside the maximum range available for a misdemeanor and therefore illegal. See Mizell v. State, 119 S.W.3d 804, 806 (Tex. Crim.App.2003) (stating a sentence outside

the maximum range of punishment for that offense is illegal); see also Speth v. State, 6 S.W.3d 530, 532–33 (Tex.Crim.App.1999) ("[A] defendant has an absolute and non-waivable right to be sentenced within the proper range of punishment established by the Legislature."). Although appellant does not specifically argue that his punishment is improper on this basis, we conclude that his sentence is void because it was above the statutory maximum for a Class A misdemeanor. See Baker v. State, 278 S.W.3d 923, 927 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd) ("Any court with jurisdiction can notice and take action upon an illegal or void sentence at any time, even sua sponte."); see also Lugo, 2010 WL 1712488, at *2 (finding sentence void and remanding for new punishment trial because defendant was convicted of a misdemeanor but punished in the range for felony stalking); see also Ex parte Hernandez, 698 S.W.2d 670, 670–71 (Tex. Crim.App.1985) (finding sentence void and remanding for new sentencing because defendant was fined and act in effect at time of his sentencing did not authorize fine).

We reform the judgment to reflect that appellant was convicted of a Class A misdemeanor. We reverse the portion of the trial court's judgment sentencing appellant to twenty years' imprisonment and remand for a new punishment hearing.[3]

## DOUBLE JEOPARDY

■■■ In his fifth and sixth issues, appellant claims his constitutional rights against double jeopardy were violated. Essentially, appellant contends the State's use of his prior conviction for aggravated assault, which arose from the 1993 burglary incident, subjected him to multiple prosecutions and punishment. The Fifth

---

**3.** Because we reverse appellant's punishment on this basis, we need not address appellant's second issue in which he argues that his sentence was improperly enhanced to a second degree felony.

Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Texas Constitution similarly provides, "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. These clauses have been interpreted to prevent (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Evans v. State,* 299 S.W.3d 138, 140–41 (Tex.Crim.App.2009) (citing *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

■■■■ The State asserts that appellant has waived his double jeopardy claims because he did not raise the issue at trial. Appellant relies upon *Jones v. State,* 586 S.W.2d 542, 544 (Tex.Crim.App.1979 [Panel Op.]) for the proposition that a plea of former jeopardy may be raised for the first time on appeal. *Id.* More recent decisions establish that a defendant bears the burden of preserving, in some fashion, a double jeopardy objection at or before the time the issue of his guilt is submitted to the finder of fact. *See Gonzalez v. State,* 8 S.W.3d 640, 642 (Tex.Crim.App.2000); *King v. State,* 161 S.W.3d 264, 267 (Tex. App.-Texarkana 2005, pet. ref'd). Because of the fundamental nature of double jeopardy protections, however, appellant is excused from the preservation requirement when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *See Langs v. State,* 183 S.W.3d 680, 687 (Tex.Crim.App.2006); *Gonzalez,* 8

S.W.3d at 643. The critical inquiry is whether the record before the reviewing court clearly reflects a double jeopardy violation. *Long v. State,* 130 S.W.3d 419, 424 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Appellant must satisfy both prongs of this test in order to raise his complaint for the first time on appeal. *Id.*

■■■■ The constitutional protections against double jeopardy apply "only where the second prosecution is for the *same offense* as that for which a person has already been in legal jeopardy." *Milner v. State,* 263 S.W.3d 353, 356 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 14. The former trial "must have been upon the same criminal act for which the State is again seeking to prosecute the defendant." *Milner,* 263 S.W.3d at 356. Thus, in determining whether appellant has preserved his double jeopardy complaints for review, the record must clearly demonstrate that he was subjected to multiple prosecutions or punishments for the same offense. Appellant argues he was tried and punished multiple times for the 1993 incident because the State used his conviction for aggravated assault as reduced from burglary of a habitation to prove an essential element of the stalking offense. We disagree.

■■■■ Separate offenses constitute the same offense for purposes of double jeopardy when each element of the first offense is identical to each element of the second offense. *See id.* (citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). When determining whether multiple offenses constitute the same offense, we compare the elements of the offenses, not the conduct of the accused. *Ortega v. State,* 171 S.W.3d 895, 899 (Tex.Crim.App.2005). If different elements are present, double jeopardy does not attach. *Milner,* 263

S.W.3d at 356. However, if each element of the offenses are identical, double jeopardy attaches, and successive prosecutions are barred. *Id.*

Here, the offense of aggravated assault for which appellant previously had been convicted consists of clearly different elements than the stalking offense that is being appealed. Appellant's prior conviction for aggravated assault required proof that he (1) committed assault and (2) caused serious bodily injury to another, including his spouse. *See* Act of May 22, 1991, 72d Leg., R.S., ch. 334, § 2, 1991 Tex. Gen. Laws 1380, 1381 (current version at TEX. PENAL CODE ANN. § 22.02 (West Supp.2009)). In contrast, appellant's stalking conviction required proof that he, on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Simmons, knowingly engaged in conduct, including following Simmons, that (1) he knew or reasonably believed Simmons would regard as threatening bodily injury or death, (2) caused Simmons to be placed in fear of bodily injury or death, and (3) would cause a reasonable person to be placed in fear of bodily injury or death for himself or herself. TEX. PENAL CODE ANN. § 42.072(a). Both of these offenses contain separate elements and, as such, do not constitute the same offense for double jeopardy purposes. *See Ortega,* 171 S.W.3d at 899–900 (concluding appellant's prior conviction for resisting arrest and later conviction for assault arising from the same conduct did not violate the Double Jeopardy Clause because each offense required proof of at least one fact that the other did not).

Because appellant's prior conviction for aggravated assault as reduced from burglary of a habitation and his later conviction for stalking do not constitute the same offense, we conclude the record in this case does not clearly reflect a double jeopardy violation. Consequently, by failing to object at trial, appellant forfeited his right to raise a double jeopardy violation for the first time on appeal. *See Langs,* 183 S.W.3d at 687; *Long,* 130 S.W.3d at 424 (holding appellant could not raise a double jeopardy claim for the first time on appeal because there was no violation clearly reflected on the face of the record). We overrule appellant's fifth and sixth issues.

### CONSTITUTIONALITY OF SECTION 42.072

■ In his seventh and eighth issues, appellant challenges the constitutionality of section 42.072. Specifically, appellant argues the statute is unconstitutional on its face because it violates the free speech guarantees of the United States and Texas Constitutions.[4] *See* U.S. CONST. amend. I; TEX. CONST. art. I, § 8. The Court of Criminal Appeals has recently held that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute." *Karenev v. State,* 281 S.W.3d 428, 434 (Tex.Crim.App.2009).

---

4. Appellant also argues that it is unconstitutional to convict him based on conduct occurring in 1993 because the stalking statute in effect at that time was declared unconstitutional. *See Long v. State,* 931 S.W.2d 285 (Tex.Crim.App.1996). We reject this argument. Appellant did not commit stalking in 1993; he committed assault and burglary. Further, the stalking statute was amended in 1997, and that version was never declared unconstitutional. *See* Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 1, 1997 Tex. Gen. Laws 1 (amended 2001). The current statute, which is substantially similar to the 1997 statute but raises the offense from a Class A misdemeanor to a felony, provides that if any element of the offense occurred prior to the effective date of the statute, the 1997 statute applies. *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 2, 2001 Tex. Gen. Laws 2795, 2796. Thus, because neither the current nor the 1997 statute has been declared unconstitutional, appellant's argument fails.

Here, there is no indication in the record that appellant raised a facial challenge to the constitutionality of section 42.072 at trial. Appellant has thus waived this issue on appeal. *Id.; see also Eubank v. State,* No. 14–09–00323–CR, 2009 WL 4840204, at *1 (Tex.App.-Houston [14th Dist.] Dec. 17, 2009, no pet.) (mem. op., not designated for publication) (appellant waived facial challenge of statute by failing to raise issue at trial); *Sony v. State,* 307 S.W.3d 348, 353 (Tex.App.-San Antonio 2009, no pet.) (same). We overrule issues seven and eight.

### Ex Post Facto Violations

 In his ninth and tenth issues, appellant argues the present version of section 42.072 violates the constitutional prohibitions against ex post facto laws.[5] *See* U.S. Const. art. 1, § 9, cl. 3; Tex. Const. art. I, § 16. An ex post facto law is any law that (1) punishes as a crime any act that was innocent when performed, (2) inflicts greater punishment than the law attached to a criminal offense when committed, (3) deprives the accused of any defense available at the time the act was committed, or (4) alters the legal rules of evidence and requires less or different testimony than the law required at the time of the commission of the offense to convict the accused. *See Carmell v. Texas,* 529 U.S. 513, 522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000); *Rodriguez v. State,* 93 S.W.3d 60, 66 (Tex.Crim.App.2002); *State v. Collazo,* 264 S.W.3d 121, 128 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd). The sole concern of an appellate court engaged in an ex post facto analysis is whether the statute in question assigns more severe criminal or penal consequences to an act than did the law in place when the act occurred. *Sepeda v. State,* 280 S.W.3d 398, 401 (Tex. App.-Amarillo 2008, pet. ref'd); *State v. Pieper,* 231 S.W.3d 9, 12 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

 According to appellant, section 42.072 is an improper ex post facto law because, as applied in this case, (1) acts committed prior to the effective date of the statute were made punishable as elements of the charged offense, (2) his punishment was increased based on acts committed prior to the effective date of the statute, and (3) he was deprived of an affirmative defense which had been available under a previous version of the statute. Appellant is essentially arguing that an ex post facto violation occurred because the trial court improperly applied the current version of section 42.072 to certain acts that were committed prior to the effective date of the statute. This argument is misplaced. The prohibition against ex post facto laws is a prohibition against legislative and not judicial action. *Ex parte Bonham,* 707 S.W.2d 107, 108 n. 1 (Tex.Crim.App.1986). "[A]n ex post facto problem does not arise from a trial court's erroneous retroactive application of a statute, but only if the statute itself has retroactive effect." *Ortiz v. State,* 93 S.W.3d 79, 91 (Tex.Crim.App. 2002). The provisions of section 42.072 apply only to offenses committed after September 1, 2001; any offense committed prior to this date is covered by the law in effect at the time the offense occurred. *See* Act of May 26, 2001, 77th Leg., R.S.,

---

**5.** The State claims appellant has failed to preserve these issues for review because he did not raise an ex post facto challenge to section 42.072 at trial. An ex post facto claim, however, may not be waived and can be raised for the first time on appeal. *See Ieppert v. State,* 908 S.W.2d 217, 220 (Tex. Crim.App.1995); *Holcomb v. State,* 146 S.W.3d 723, 730 (Tex.App.-Austin 2004, no pet.); *Dean v. State,* 60 S.W.3d 217, 219 n. 1 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Appellant's complaints are thus properly before this court.

ch. 1222, § 3, 2001 Tex. Gen. Laws 2795, 2796 (current version at Tex. Penal Code Ann. § 42.072). Because section 42.072 does not apply retroactively, no ex post facto violation has occurred. *See Ortiz,* 93 S.W.3d at 90–91 (finding no ex post facto violation where the appellant argued only that the trial court retroactively applied the challenged statute and did not show the statute itself operated retroactively). Appellant's ninth and tenth issues are overruled.

### CONCLUSION

We reform the judgment to reflect that appellant was convicted of a Class A misdemeanor and affirm that portion of the judgment as reformed. We reverse the portion of the trial court's judgment sentencing appellant to twenty years' imprisonment and remand for a new punishment hearing.

HEDGES, C.J., concurring.